R. Joseph Barton (SBN 212340)
Block & Leviton LLP
1735 20th Street, N.W.
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email: jbarton@blockleviton.com

*Counsel for the Plaintiff*
*Additional Counsel Listed Below*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

DANIELLE GAMINO, individually and on behalf of all others similarly situated,

    *Plaintiff*,

v.

SPCP GROUP, LLC

    *Defendant*

and

KPC HEALTHCARE, INC. EMPLOYEE STOCK OWNERSHIP PLAN

*Nominal Defendant*

No. 5:21-cv-01466-SB-SHK

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA**

**CLASS ACTION**

## I.   JURISDICTION AND VENUE

1.      Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

2.      This Court has personal jurisdiction over Defendant SPCP Group pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

3.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the KPC ESOP is administered in this District, and the breaches and violations giving rise to the claims occurred in this District.

4.      Pursuant to Local Rule 83-1.3, this action is a Related Case to *Gamino v. KPC Healthcare Holdings Inc, et al.,* Case No.: 5:20-cv-01126-SB (SHK) (filed June 1, 2020).

## II.   INTRODUCTION

5.      This ERISA action is brought on behalf of a Class of participants in and beneficiaries of the KPC Healthcare, Inc. Employee Stock Ownership Plan ("the KPC ESOP," "the ESOP" or "the Plan") to obtain appropriate equitable relief against Defendant for its knowing participation in breaches of fiduciary duties and transactions prohibited by ERISA. These claims arise out of a transaction that took place on August 28, 2015 (the "2015 ESOP Transaction"), through which Kali Pradip Chaudhuri sold 100% of the stock of KPC Healthcare Holdings, Inc. ("KPC") to the ESOP. This transaction was not designed to be in the best interests of the ESOP participants and caused the ESOP to pay in excess of fair market value. Indeed, the ESOP paid a price more than 400% greater than the price that Kali Pradip Chaudhuri had been willing to pay for and at which he likely acquired the company just two years earlier—even before taking into account any other consideration that Dr. Chaudhuri received as part of the 2015 ESOP Transaction.

FIRST AMENDED CLASS ACTION COMPLAINT                    2

Defendant SPCP Group, together with Dr. Chaudhuri, planned the transaction through which Dr. Chaudhuri acquired KPC one year before he sold it to the ESOP and knowingly participated in the 2015 ESOP Transaction, despite having more than sufficient information to know that the Transaction was prohibited by ERISA and a violation of the ESOP fiduciaries' duties to the Plan and its participants.

6. Through this action, Plaintiff seeks to enforce her rights and those of other participants in the Plan under ERISA, to obtain appropriate equitable relief as a result of Defendant's knowing participation in breaches of fiduciary duty and prohibited transactions.

## III.   INTRA-DISTRICT ASSIGNMENT

7. Plaintiff resides in the State of Georgia.

8. Based on Plaintiff's counsel's investigation, Defendant SPCP Group, LLC is located in the State of Delaware.

9. The alleged breaches took place in the Eastern Division of the Central District of California. This action is a Related Case to *Gamino v. KPC Healthcare Holdings Inc, et al.,* Case No.: 5:20-cv-01126-SB (SHK) (filed June 1, 2020).

## IV.   PARTIES

### Plaintiff

10. Plaintiff Danielle Gamino is a former employee of KPC. Plaintiff Gamino was employed as a medical coder by KPC from May 29, 2008 through December 17, 2016, first at Coastal Communities Hospital (now known as South Coast Global Medical Center) and then at the Orange County Global Medical Center, both in Santa Ana, California. As a result of her employment, Plaintiff Gamino became and is a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the KPC ESOP because she has a colorable claim for additional benefits under the Plan. Plaintiff Gamino resides in Buford, Georgia.

FIRST AMENDED CLASS ACTION COMPLAINT                    3

**Defendant**

11.    Defendant SPCP Group, LLC ("SPCP Group") is a Delaware limited liability company and an investment management firm affiliated with Silver Point Capital Partners, a hedge fund.

**Nominal Defendant.**

12.    KPC Healthcare, Inc. Employee Stock Ownership Plan, a/k/a the KPC Healthcare, Inc. ESOP (the "KPC ESOP"), is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). As the Plan Administer is located in Riverside, California, the Plan is also believed to be administered in Riverside, California. The ESOP purports to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), and an employee stock ownership plan under ERISA § 407(d)(6) that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11. The written instrument, within the meaning of ERISA § 402, 29 U.S.C. §1102, by which the Plan is maintained is the KPC Healthcare, Inc. Employee Stock Ownership Plan (the "Plan Document"), effective as of April 1, 2015.

**Relevant Non-Parties to This Action Who Are Defendants in *Gamino v. KPC Healthcare Holdings, Inc.* Case No.: 5:20-cv-01126-SB (SHK) (filed June 1, 2020)**

13.    KPC Healthcare Holdings, Inc. ("KPC") is and has been a California Corporation with its principal place of business in Riverside, California (according to the Summary Plan Description) or Corona, California (according to statements of information filed with the California Secretary of State). Since the inception of the ESOP, KPC has been the sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Pursuant to KPC's authority to appoint and remove other fiduciaries of the ESOP, including the Trustee and the members of the ESOP Committee, KPC is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The current version of the Summary Plan

FIRST AMENDED CLASS ACTION COMPLAINT                                    4

Description for the ESOP identifies KPC's address as 6800 Indiana Avenue, Suite 130, Riverside CA 92506 (i.e. in the Eastern Division of this District).

*The ESOP Committee & the Committee Members*

14.    KPC Healthcare, Inc. Employee Stock Ownership Plan Committee (the "ESOP Committee") is identified as the plan administrator in the ESOP's Plan Document within the meaning of ERISA § 3(16)(A), 29 U.S.C § 1002(16)(A). Pursuant to Section 11.15 of the written instrument of the Plan, the ESOP Committee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. The ESOP Committee meets the definition of a person within the meaning of ERISA § 3(9), 29 U.S.C. § 1002(9), because ERISA defines the term person broadly and because a committee meets the definition of an association or an unincorporated organization. The Committee's address is believed to be 6800 Indiana Avenue, Suite 130, Riverside CA 92506 (i.e. in the Eastern Division of this District).

15.    The "Committee Defendants" means the ESOP Committee and the members of the Committee. According to the notes to the financial statements in Form 5500s filed with the United States Department of Labor, all members of the Board of Directors serve and have served on the ESOP Committee. As a result of the ESOP Committee being designated as the Plan Administrator and a named fiduciary of the ESOP under the terms of the Plan, and because the ESOP Committee and its members having discretionary authority or responsibility for the administration of the Plan, the ESOP Committee and its members are and were fiduciaries of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A).

*The Trustee*

16.    Alerus Financial, N.A. ("Alerus") acted as Trustee of the ESOP in connection with the 2015 ESOP Transaction. Alerus was appointed as the Trustee of the KPC ESOP pursuant to the KPC Healthcare, Inc. Employee Stock

FIRST AMENDED CLASS ACTION COMPLAINT                                          5

Ownership Trust dated April 1, 2015 (the "Trust Agreement"). Since the 2015 ESOP Transaction, Alerus has continued to be the Trustee of the KPC ESOP. Pursuant to Section 11.15 of the written instrument of the Plan, the Trustee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. As a result of being the Trustee of the KPC ESOP, Alerus has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Alerus is headquartered in Grand Forks, North Dakota.

*The Board of Directors*

17.    Kali Pradip Chaudhuri ("Dr. Chaudhuri") is the Chief Executive Officer of KPC and the chairman of its board of directors. By virtue of his position as CEO, membership on the KPC Board of Directors and his membership on the ESOP Committee, Kali Pradip Chaudhuri is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of the 2015 ESOP Transaction. At the time of the 2015 ESOP Transaction, Dr. Chaudhuri was a "party in interest" as to the ESOP as defined in ERISA § 3(14) (A) and (H), 29 U.S.C. § 1002(14) (A) and (H). Prior to the 2015 ESOP Transaction, Kali Pradip Chaudhuri was the sole shareholder of KPC. He sold his shares to the ESOP in the 2015 ESOP Transaction. Dr. Chaudhuri resides in Hemet, CA in Riverside County (i.e., in the Eastern Division of this District).

18.    Kali Priyo Chaudhuri, the son of Kali Pradip Chaudhuri, is the Chief Financial Officer of KPC, and is a member of its Board of Directors of KPC. Kali Priyo Chaudhuri was a member of the Board at the time of the 2015 ESOP Transaction. By virtue of his membership on the KPC Board of Directors and in turn, membership on the ESOP Committee, Kali Priyo Chaudhuri is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of 2015 ESOP Transaction. Kali Priyo Chaudhuri resides in Tustin, CA in Orange County (i.e., in the Southern Division of this District).

FIRST AMENDED CLASS ACTION COMPLAINT                    6

19.     Amelia Hippert is a member of the KPC Board of Directors. Amelia Hippert was appointed to the Board after the 2015 ESOP Transaction. By virtue of her membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, Amelia Hippert is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of her appointment to the KPC Board of Directors. Amelia Hippert resides in Hemet, CA in Riverside County (i.e., in the Eastern Division of this District).

20.     William E. Thomas is the secretary of KPC, in-house counsel for KPC, and a member of the Board of Directors of KPC. William E. Thomas was a member of the Board at the time of the 2015 ESOP Transaction. Upon information and belief, Thomas has been Kali Pradip Chaudhuri's long-standing attorney. By virtue of his membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, William E. Thomas is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of 2015 ESOP Transaction. Upon information and belief, Mr. Thomas resides in Riverside County (i.e., the Eastern Division of this District).

21.     Lori Van Arsdale is a member of the KPC board of directors. Ms. Van Arsdale was appointed to the Board after the 2015 ESOP Transaction. By virtue of her membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, Ms. Van Arsdale is and has been at all relevant times been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of her appointment to the KPC Board of Directors. Ms. Van Arsdale resides in Hemet, CA in Riverside County (i.e., in the Eastern Division of this District).

22.     The "Directors" are collectively referred to as Kali Pradip Chaudhuri, Kali Priyo Chaudhuri, Amelia Hippert, William E. Thomas, and Lori Van Arsdale.

FIRST AMENDED CLASS ACTION COMPLAINT                                    7

# V.    CLASS ACTION ALLEGATIONS

23.    Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of the following Class:

> All participants in the KPC ESOP from August 28, 2015 or any time thereafter (unless they terminated employment without vesting in the ESOP and did not subsequently vest) and those participants' beneficiaries. Excluded from the Class are (a) Defendant SPCP Group and all Defendants named in *Gamino v. KPC Healthcare Holdings Inc, et al.,* Case No.: 5:20-cv-01126-SB (SHK) (filed June 1, 2020), (b) any fiduciary of the Plan; (c) the officers and directors of KPC or of any entity in which one of the individual Defendants named in *Gamino v. KPC Healthcare Holdings Inc., et al.* has a controlling interest; (d) the immediate family members of any of the foregoing excluded persons, and (e) the legal representatives, successors, and assigns of any such excluded persons.

**Impracticability of Joinder**

24.    The members of the Class are so numerous that joinder of all members is impracticable. According to the 2018 Form 5500 filed with the Department of Labor, which is the most recent available Form 5500, there were 2,655 participants (including 2,132 active participants, 228 retired or separated participants receiving benefits and 283 retired or separated participants entitled to future benefits) within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP as of August 31, 2019.

**Commonality**

25.    The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts (or failure to act). Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

FIRST AMENDED CLASS ACTION COMPLAINT                                    8

a.      Whether Alerus caused the ESOP to engage in prohibited transactions under ERISA by causing or permitting the ESOP to purchase KPC stock for more than adequate consideration in the 2015 ESOP Transaction;

b.      Whether Alerus engaged in a prudent investigation of the proposed purchase of KPC stock by the ESOP in the 2015 ESOP Transaction;

c.      Whether Alerus breached its fiduciary duty to ESOP participants by causing the ESOP to purchase KPC stock in 2015 for more than fair market value;

d.      Whether KPC (and/or the Director Defendants) breached their fiduciary duties by failing to adequately monitor the ESOP's Trustee and the Committee Defendants;

e.      Whether Defendant SPCP Group knowingly participated in prohibited transactions or in fiduciary breaches by Alerus;

f.      The appropriate equitable relief to be awarded as a result of Defendant's knowing participation in any fiduciary breaches or prohibited transactions.

**Typicality**

26.    Plaintiff's claims are typical of those of the Class because their claims arise from the same event, practice and/or course of conduct. Specifically, Plaintiff, on behalf of the Class, alleges that Defendant knowingly participated in breaches of fiduciary duties and prohibited transactions in violation of ERISA in connection with the sale of stock to the ESOP. Plaintiff challenges the legality and appropriateness of a plan-wide transaction and disclosures, and Plaintiff like other ESOP participants in the Class, has received less in her ESOP account based on the same per share purchase price of KPC stock and continue to suffer such losses in the present.

FIRST AMENDED CLASS ACTION COMPLAINT                    9

**Adequacy**

27.    Plaintiff will fairly and adequately represent and protect the interests of the Class.

28.    Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

29.    Defendant does not have any unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

30.    Plaintiff is represented by counsel with experience in complex class actions, ERISA, and with particular experience and expertise in ESOP litigation. Plaintiff's counsel has been appointed as class counsel in numerous class action ESOP cases.

**Fed. R. Civ. P. Rule 23(b)(1)**

31.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). This action challenges whether Defendants knowingly participated in fiduciary breaches that affected the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

32.    Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Resolving whether Defendant participated in fiduciary breaches or prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Fed. R. Civ. P. Rule 23(b)(2)**

33.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendant knowingly participated in breaches of fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendant's fiduciary violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**Fed. R. Civ. P. Rule 23(b)(3)**

34.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendant's obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for KPC stock in the 2015 ESOP Transaction in which Defendant knowingly participated. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

35.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan. The amount to be recovered by individual Class members is small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result

in inconsistent judgments about Defendant's duties and liability with regard to the ESOP.

36. The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a. The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b. The only other litigation concerning this controversy was filed by Plaintiff on behalf of a now certified Class in this District, but does not include claims against this Defendant.

c. This District is the most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) KPC is headquartered in this District, (ii) the KPC ESOP is administered in this District, (iii) certain non-party witnesses are located in this District, and (iv) this action is a Related Case to *Gamino v. KPC Healthcare Holdings Inc, et al.*, Case No.: 5:20-cv-01126-SB (SHK) (filed June 1, 2020).

d. The names and addresses of the members of the Class are available from the ESOP. Notice can be provided to all members of the Class to the extent required by Rule 23.

## VI.   FACTUAL ALLEGATIONS

**Dr. Kali Pradip Chaudhuri Finances the Acquisition of Four Hospitals Over Community Objections**

37. Integrated Healthcare Holdings, Inc. ("Integrated Health") was formerly a publicly traded medical holding company. According to Integrated Health's Form 10-K for the fiscal year ended March 31, 2013, the company had no material operations until March 8, 2005, when it acquired four Orange County, California hospitals previously operated by Tenet Healthcare Corp.: Western

FIRST AMENDED CLASS ACTION COMPLAINT                    12

Medical Center in Santa Ana; Western Medical Center in Anaheim; Coastal Communities Hospital in Santa Ana; and Chapman Medical Center in Orange. Integrated Health purchased the hospitals in part through debt financing provided by Dr. Chaudhuri.

38.     According to an article entitled "KPC Healthcare Bets on ESOP" published in the Orange County Business Journal on March 13, 2017, in 2005 Dr. Chaudhuri initially led Integrated Health's bid to acquire the four Tenet hospitals.

39.     Integrated Health's acquisition of these hospitals was met with vocal public opposition because of Dr. Chaudhuri's involvement. One of Dr. Chaudhuri's other companies, KPC Medical Management Inc., went bankrupt shortly after acquiring the Southern California provider network of MedPartners, resulting in the abrupt closure of 38 California clinics and abruptly leaving 300,000 patients without medical care.

40.     The KPC Medical Management bankruptcy was dogged by allegations of financial mismanagement and self-dealing by Dr. Chaudhuri. According to an article entitled "KPC Filings Spur More Questions" published by the California American College of Emergency Physicians in February of 2001, a bankrupt affiliate of KPC Medical Management paid $5 million to Dr. Chaudhuri in January 2000, even as KPC Medical Management was negotiating with HMOs for a bailout loan. The week before KPC Medical Management filed for bankruptcy, it paid $1.5 million to its attorneys, including $150,000 to Dr. Chaudhuri's personal attorney William Thomas (after he had already resigned as corporate counsel to KPC Medical Management). And creditors alleged that Chaudhuri had improperly moved assets between KPC Medical Management and his other businesses.

41.     According to documents filed in litigation between Dr. Chaudhuri and William E. Thomas, among others, on the one hand, and two Southern California physician groups on the other hand, Dr. Chaudhuri systematically looted

FIRST AMENDED CLASS ACTION COMPLAINT                                    13

MedPartners—shutting down facilities, firing doctors and staff members, all under the pretense of cutting costs. Meanwhile, Dr. Chaudhuri lined his own pockets while continuing to draw income from MedPartners while refusing to pay independently contracted specialty physicians. Dr. Chaudhuri even had staff write checks to show health plans payments were being made while instructing them to stash those same checks in locked filing cabinets (instead of mailing them). Within the first 18 months following the MedPartners acquisition, $30 million in assets had disappeared from the company and it had run up debts of $450 million.

42.    In response to Dr. Chaudhuri's contemplated involvement in the Integrated Health purchase of the Tenet hospitals, a spokeswoman for the California Department of Health Services stated that they had "concerns… about the applicant's reputable and responsible character." California state senators Joseph Dunn and Deborah Ortiz stated in a letter to the director of the DHS that they were "deeply concerned" about Chaudhuri's involvement in the venture and sought "assurances that Dr. Chaudhuri's role would not result in the [Western Medical-Santa Ana] hospital going the KPC route."

43.    According to a January 27, 2005 OC Weekly article entitled, "Now With Less Chaudhuri!" then current and former chiefs of staff at the Western Medical of Santa Ana trauma facility, Michael Fitzgibbons, and Robert Steedman, opposed the deal because of Dr. Chaudhuri's involvement. Together with more than 70 other doctors, they created a competing acquisition group, Western Medical Center Acquisition, LLC, and organized protests of the Integrated Health purchase. But Fitzgibbons and Steedman were intimidated into silence and acquiescence to the Integrated Health transaction by Dr. Chaudhuri's litigation threats. Following the acquisition, Fitzgibbons would continue to face retaliation. The CEO of Integrated Health, Bruce Mogel, planted a loaded handgun in Fitzgibbon's car and called the police on him. Mogel also caused Fitzgibbon's daughter to be in a serious auto accident after her tires were slashed. Fitzgibbon

FIRST AMENDED CLASS ACTION COMPLAINT    14

would later win a $5.7 million jury verdict against both Integrated Health and Mogel for this conduct.

44.     As a result of the opposition by the public, doctors, regulatory authorities, and legislators to Chaudhuri's involvement in another acquisition of medical facilities, Dr. Chaudhuri reduced his planned stake in Integrated Health and its acquisition of the Tenet hospitals. According to a March 21, 2005 article in the Los Angeles Times entitled "Doctors Operate This Company," Dr, Chaudhuri took a reduced role at Integrated Health as part of its acquisition of the Tenet hospitals, providing debt financing for the transaction instead of a substantial equity investment. Cardiologist Anil Shah ("Shah") and a consortium of doctors led by him, Orange County Physicians Investment Network LLC ("OCPIN") provided the bulk of the equity investment and took an 83% ownership interest in Integrated Health. Chaudhuri also owned 49% of a real estate subsidiary formed by OCPIN to own land associated with three of the four hospitals. And Dr. Chaudhuri and his lawyer—William E. Thomas—retained a right to purchase up to 25% of Integrated Health.

45.     In that same March 21, 2005 article in the Los Angeles Times, Shah claimed that no one should be concerned by Dr. Chaudhuri's involvement in Integrated Health, because "He will never have a controlling interest." At the same time, according to the California Healthcare Daily Edition, Larry Anderson, president of Integrated Health, "repeatedly assured critics that Chaudhuri would have no role in the daily operations of the facilities…."

46.     On information and belief, Defendant SPCP was aware of allegations of past improprieties by Dr. Chaudhuri, including through it and/or its affiliates' activities as investment partners with Dr. Chaudhuri in Integrated Health.

**Integrated Health's Stock Performance & Value 2010 to 2013**

47.     From April 2010 to March 2011, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.02 and $0.07 per share. Based

FIRST AMENDED CLASS ACTION COMPLAINT                                    15

on the 255,307,262 shares of common stock of Integrated Health outstanding between April 2010 and March 2011, these stock prices imply a market capitalization and equity value of between approximately $5.1 million and $17.9 million during that period.

48.    According to Integrated Health's 2011 Form 10-K, for the fiscal year ending March 31, 2011, Integrated Health had assets of $149.2 million and liabilities of $167.8 million, for a stockholders' deficiency of approximately $18.7 million.

49.    From April 2011 to March 2012, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.01 and $0.22 per share. Based on the 255,307,262 shares of common stock of Integrated Health outstanding between April 2011 and March 2012, these stock prices imply a market capitalization and equity value of between approximately $2.6 million and $56.2 million during that period.

50.    According to Integrated Health's 2012 Form 10-K, for the fiscal year ending March 31, 2012, Integrated Health had assets of $145 million and liabilities of $157 million, for a stockholders' deficiency of $11 million.

51.    From April 2012 to March 2013, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.04 and $0.11 per share. Based on the 255,307,262 shares of common stock of Integrated Health outstanding at that time, this implies a market capitalization and equity value of between approximately $10.2 million and $28.1 million between April 2012 and March 2013.

52.    According to Integrated Health's 2013 Form 10-K, for the fiscal year ending March 31, 2013, Integrated Health had assets of $167 million and liabilities of $197 million, for a stockholders' deficiency of $30 million.

53.    On information and belief, Defendant SPCP was aware of the market capitalization from time to time reported by Integrated Health in public SEC

FIRST AMENDED CLASS ACTION COMPLAINT                                    16

filings, including by virtue of it and/or its affiliates' activities as investors in Integrated Health.

**Dr. Kali Pradip Chaudhuri Purchases 100% of the Shares of Integrated Health and SPCP Acquires Warrants**

54.    Between 2005 and 2010, Dr. Chaudhuri gradually acquired stock in and consolidated his control over Integrated Health. According to an Orange County Register article dated January 25, 2010 entitled "Controversial doctor gets more clout at Western Med," by 2010 Dr. Chaudhuri had amassed a majority ownership interest in Integrated Health in addition to being its principal lender.

55.    Based on documents publicly filed with the Securities and Exchange Commission, in April of 2010 Dr. Chaudhuri acquired two sets of common stock warrants collectively entitling the holder to acquire approximately 309,000 shares of Integrated Health common stock.

56.    Based on allegations recited in docket entry no. 211 in *Gamino v. KPC Healthcare Holdings, Inc.*, on April 13, 2010, SPCP acquired a common stock warrant entitling the holder to acquire 79,182,635 shares of the common stock of Integrated Health.

57.    By March 31, 2013, Integrated Health's Form 10-K identified Kali Pradip Chaudhuri as the beneficial owner of 77.55% of the outstanding stock of the company.

58.    On September 12, 2013, Kali Pradip Chaudhuri filed an Amended Schedule 13D with the SEC stating he "had reached an understanding as to the principal terms of a proposed transaction in which Dr. Chaudhuri or his affiliate will acquire an aggregate of 100,110,430 shares of common stock" held by Shah, OCPIN, and a Mr. Hari S. Lal. Dr. Chaudhuri further stated that after closing those purchases he intended to "acquire all of the remaining shares of common stock of the Issuer."

FIRST AMENDED CLASS ACTION COMPLAINT                                    17

59. According to an Amended Schedule 13-D filed by Silver Point Capital, L.P with the SEC on September 12, 2013, Kali Pradip Chaudhuri agreed to pay $0.203 per share to acquire these 100,110,430 shares of Integrated Health stock and planned "a second step, 'short-form' merger in accordance with the laws of the State of Nevada pursuant to which all other shareholders of the Issuer would receive merger consideration that would approximate the consideration per share received by the Selling Shareholders."

60. According to the Form 10-Q filed by Integrated Health with the Securities and Exchange Commission on November 14, 2013, Integrated Health had 255,307,262 shares of stock outstanding as of November 7, 2013—the same number that it had outstanding as of August 7, 2013, according to the Form 10-Q filed by Integrated Health with the Securities and Exchange Commission on August 14, 2013.

61. The terms Dr. Chaudhuri disclosed under which he would acquire 100% of the outstanding common stock of Integrated Health therefore implied a value to the entire company of approximately $51,827,374 (255,307,262 shares at $0.203/share).

62. Integrated Health then terminated the registration of its securities with the SEC effective January 7, 2014.

63. On information and belief, Dr. Chaudhuri consummated the planned purchase of 100,110,430 shares of Integrated Health stock from Shah, OCPIN, and Mr. Lal for $0.203 per share.

64. Based on documents publicly filed with the Securities and Exchange Commission, Silver Point Capital, L.P. is both a member of Defendant SPCP and the investment manager of Defendant SPCP. Based on the close affiliate relationship between Silver Point Capital, L.P., which reported the essential terms of the transactions by which Dr. Chaudhuri acquired 100% of the outstanding stock

FIRST AMENDED CLASS ACTION COMPLAINT                    18

of Integrated Health, Defendant SPCP was aware of the terms of those transactions.

65.    According to contemporaneous postings to InvestorsHub, an internet forum for discussion of stock trades, remaining shareholders of Integrated Health were cashed out at a price of $0.203 per share in May of 2014—the price at which Dr. Chaudhuri had previously disclosed he would acquire 100% of the outstanding stock of Integrated Health.

66.    Dr. Chaudhuri acquired all the outstanding stock of Integrated Health through these transactions.

**SPCP Liquidates Its Warrants through the Same Transaction by which Sells the Company to the ESOP at an Inflated Price**

67.    Between 2013 and 2015, Integrated Health experienced financial distress. Repeated rounds of layoffs and rehirings had long been characteristic of Integrated Health's employment practices. As a result of the financial difficulties and related layoffs, employees such as Plaintiff Gamino believed that their employment was increasingly precarious and were never sure if they would be employed the next day.

68.    According to the Articles of Incorporation obtained from the State of California Secretary of State, KPC was incorporated on July 24, 2015.

69.    According to an article published in the Press Enterprise on June 11, 2015, KPC was a new name for Integrated Health, which Kali Pradip Chaudhuri had taken private in 2014.

70.    According to an article published in the Orange County Business Journal on March 13, 2017, entitled "KPC Healthcare Bets on ESOP," KPC was owned by Kali Pradip Chaudhuri prior to the 2015 ESOP Transaction. In that article, Dr. Chaudhuri is quoted as stating that "*I give my shares to [employees]* but if they stay for five years [or more], it's a win for us." (emphasis added; brackets in

FIRST AMENDED CLASS ACTION COMPLAINT                                    19

original). By this statement, Dr. Chaudhuri acknowledged that he sold his shares to the ESOP.

71. According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, KPC Healthcare adopted the ESOP effective April 1, 2015.

72. On August 28, 2015, Alerus, acting as Trustee of the ESOP, caused the ESOP to purchase 100% of the shares of KPC common stock.

73. Based on allegations recited in docket entry no. 211 in *Gamino v. KPC Healthcare Holdings, Inc.*, and on the Analysis of Transaction Fairness filed by the KPC Defendants at docket entry no. 206-2 in *Gamino v. KPC Healthcare Holdings, Inc.*, on April 13, 2010, as part of the 2015 ESOP Transaction Defendant SPCP Group sold its common stock warrant entitling the holder to acquire 79,182,635 shares of common stock of KPC to KPC on August 27, 2015, in exchange for: (a) $18,810,000 in cash; (b) a promissory note in the original principal amount of $26,946,000; (c) a warrant to purchase 762,592 shares of KPC at an exercise price of $2.50 per share; and (d) 10.2% of any net payments received by KPC or its subsidiaries under California's hospital quality assurance fee (QAF) program based on services provided from January 1, 2017, to December 31, 2024.

74. Based on the Analysis of Transaction Fairness filed by the KPC Defendants at docket entry no. 206-2 in *Gamino v. KPC Healthcare Holdings, Inc.*, the Trustee's valuation advisor viewed the "simultaneous transactions" of the ESOP stock purchase and redemption of warrantholders as interrelated, referring to them repeatedly as "the Transaction," and evaluating the fairness of "the Transaction" to the ESOP from a financial point of view "taken as a whole." Among other components of the Transaction, the Analysis of Transaction Fairness described the entry into an Investor Rights Agreement among the Trust, the Seller, the Redeemed Warrantholders (defined to include SPCP) and KPC Healthcare, Inc.

FIRST AMENDED CLASS ACTION COMPLAINT                    20

75. To finance the purchase, the Plan entered into a $207,574,000 term loan agreement with KPC. The remaining $10,000,000 was paid by a contribution of cash from KPC to the Plan.

76. This purchase price for the KPC stock component of the 2015 ESOP Transaction represented a more than 419% increase over the equity value implied by Kali Pradip Chaudhuri's 2013 proposed and presumed price to acquire the company's stock when it was known as Integrated Health.

77. This purchase price for the KPC stock component of the 2015 ESOP Transaction also represented an increase of between 774% and 2,133% from the equity value implied by the prices at which Integrated Health traded on the public market between April 2012 and March 2013.

78. This purportedly spectacular rise in KPC's equity value is belied by KPC's operating results. In a June 16, 2018 interview with KPC's then-CEO Suzanne Richards, in *Modern Healthcare*, Ms. Richards candidly admitted that approximately three years before KPC was losing money: "When I came in, the facilities were not even close to making budget, and when you can't make budget you can't have a profit." She further acknowledged that her tenure had been marked by "reductions in force." Indeed, the introductory section of the interview explained that when Ms. Richards started at KPC, the four hospitals that KPC then owned "were losing $2.5 million a month." A June 19, 2015 article in the *Orange County Business Journal*, "KPC Health Names Richards CEO of Health Operations," reported that she was named to that position as of June 2015 and had served as interim CEO since October 2014.

79. On information and belief, Defendant SPCP was aware of Integrated Health's poor operating results during this timeframe, including by virtue of its continued financial interest in KPC through the debt, warrants, and QAF rights it acquired in KPC through the 2015 ESOP Transaction and related contractual rights.

FIRST AMENDED CLASS ACTION COMPLAINT                    21

80.     As shown by the chart below, the reported equity value of the ESOP's KPC stock declined precipitously following the 2015 ESOP Transaction and has remained far below the purchase price:



81.     As explained by the Form 5500s filed with the Department of Labor, the funds borrowed by the ESOP to finance the purchase of KPC are "collateralized by the *unallocated* shares of stock and guaranteed by the Company."  But "[t]he lenders have no rights against shares once they are allocated under the ESOP."  As explained by the Form 5500, the financial statements present separately the assets and liabilities of the stock allocated to the accounts of participants from the assets and liabilities of the unallocated shares. As the acquisition indebtedness is only a liability of the *unallocated* shares, the acquisition debt cannot explain the post-acquisition depressed price of the *allocated shares*.

82.     According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, the purported fair market value for the KPC stock held by the ESOP was $27,600,000 as of August 31, 2015.

FIRST AMENDED CLASS ACTION COMPLAINT                    22

83. According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, the purported fair market value for the KPC stock held by the ESOP was $56,000,000 as of August 31, 2016.

84. According to the 2016 Form 5500 filed with the Department of Labor on February 19, 2019, the purported fair market value for the KPC stock held by the ESOP was $103,000,000 as of August 31, 2017.

85. According to the 2017 Form 5500 filed with the Department of Labor on February 4, 2019, the purported fair market value for the KPC stock held by the ESOP was $123,000,000 as of August 31, 2018.

86. According to the 2018 Form 5500 filed with the Department of Labor on July 9, 2020, the purported fair market value for the KPC stock held by the ESOP was $123,500,000 as of August 31, 2019.

87. The ESOP paid more than fair market value for KPC stock in the 2015 ESOP Transaction. Based on the information available prior to filing this lawsuit, the purchase price for the 2015 ESOP Transaction was based in part on a valuation report that was unreliable and either did not take into account or failed to properly take into account the fact that less than two years before the transaction the selling shareholder had valued the Company at less than a quarter of the sale price and that during the intervening period the Company had experienced substantial financial distress, instability, layoffs, and persistent inability to make budgets.

88. A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for the KPC shares and/or the debt incurred in connection with the Transaction was excessive. Kali Pradip Chaudhuri's proposal to acquire the Company's predecessor in late 2013 was a matter of public record and was known or ought to have been known to the fiduciaries of the Plan.

FIRST AMENDED CLASS ACTION COMPLAINT                                    23

89.    Based on documents filed with the Securities and Exchange Commission, Defendant SPCP Group had been an investor in Integrated Health since at least 2010 and it or its affiliates participated in the 2014 transaction by which Dr. Chaudhuri took Integrated Healthcare private. As a result, Defendant SPCP Group was aware that Dr. Chaudhuri was the chairman and CEO of KPC and would have had access to the financial information upon which the valuation of the 2015 ESOP Transaction was based.

90.    Based on allegations recited in docket entry no. 211 in *Gamino v. KPC Healthcare Holdings, Inc.*, email correspondence between William Thomas, employees of Eureka Capital (KPC's financial advisor for the 2015 ESOP Transaction), and Thomas Banks (a Managing Director with Defendant SPCP) indicates that SPCP Group was provided with information regarding the aggregate transaction value and the consideration paid to Defendant Kali Pradip Chaudhuri in connection with the 2015 ESOP Transaction. Defendant SPCP Group thus knew that the purchase price for KPC stock in the 2015 ESOP Transaction was dramatically in excess of the equity value implied by Dr. Chaudhuri's 2014 purchase of 100% of the outstanding stock of Integrated Health.

91.    Based on allegations recited in docket entry no. 211 in *Gamino v. KPC Healthcare Holdings, Inc.*, the Warrant Purchase Agreement entered into by Defendant SPCP Group in connection with the 2015 ESOP Transaction indicates that SPCP Group knew both that the 2015 ESOP Transaction involved the sale of 100% of the stock of KPC to an employee stock ownership plan and that Alerus was acting on behalf of the Plan in the 2015 ESOP Transaction in its capacity as trustee.

92.    Based on allegations recited in docket entry no. 211 in *Gamino v. KPC Healthcare Holdings, Inc.*, Defendant SPCP Group participated in the negotiations leading up to the 2015 ESOP Transaction, and reviewed and commented on the terms of draft agreements and transaction terms.

FIRST AMENDED CLASS ACTION COMPLAINT                    24

93.     Even after the 2015 ESOP Transaction closed, the decline in value of the KPC stock owned by the ESOP following the 2015 ESOP Transaction should have caused Alerus as well as the ESOP Committee (which consisted of all of the Director Defendants), at a minimum, to investigate whether the ESOP had paid more than fair market value in the 2015 ESOP Transaction.  To the extent that any of the fiduciaries had conducted such an investigation, that investigation as well as any corrective measures would have been reported in one of the Form 5500s filed with the Department of Labor. As none of the Form 5500s report any such investigation or corrective actions, none of the fiduciaries investigated whether fiduciary violations had occurred in the 2015 ESOP Transaction despite red flags that should have raised concerns.

### Dr. Kali Pradip Chaudhuri Continues to Use the Employee Owned Company to Benefit Insiders

94.     Despite his sale of the Company to the ESOP in 2015, Defendant Dr. Kali Pradip Chaudhuri continues to exercise operational control over KPC both directly and through a group of personally loyal family members and insiders he has installed as officers and directors of the Company. According to an information statement filed with the California Secretary of State on March 7, 2019, Dr. Chaudhuri is the CEO of KPC as well as the Chairman of the Board.

95.     According to an information statement filed with the California Secretary of State on March 7, 2019, William E. Thomas is the secretary of and a member of the Board of Directors of KPC. According to a News Release by University of California Riverside dated June 8, 2018, Mr. Thomas is the Executive Vice-President and General Counsel of the KPC Group of Companies. According to information from the California Bar website directory of lawyers, Mr. Thomas lists his business address as the headquarters for KPC Group. Even before joining KPC Group, Mr. Thomas was Dr. Chaudhuri's attorney.

FIRST AMENDED CLASS ACTION COMPLAINT                                25

96.    According to an information statement filed with the California Secretary of State on March 7, 2019, Kali Priyo Chaudhuri is the chief financial officer and a director of the Company. Kali Priyo Chaudhuri is Defendant Kali Pradip Chaudhuri's son.

97.    Together, Kali Pradip Chaudhuri, his lawyer, and his son constitute a majority bloc of the five-person board of directors of KPC.

98.    According to a press release issued by "KPC Health" on December 4, 2018, on that date Dr. Sumanta Chaudhuri was appointed the Chief Medical Officer for Hemet Valley Medical Center and Menifee Valley Medical Center, two of the hospitals affiliated with KPC. According to a video posted to YouTube by Kali Pradip Chaudhuri on January 8, 2018, Dr. Sumanta Chaudhuri is Dr. Chaudhuri's daughter.

99.    According to an undated press release issued by "KPC Health," KPC is a "subsidiary" of KPC Group. KPC Group is Kali Pradip Chaudhuri's $10 billion conglomerate with interests in real state, pharmaceuticals, and engineering as well as healthcare. Upon information and belief, KPC is simply treated as one of the group of companies that KPC Group owns.

**Relevant Provisions of the Plan Document**

*Definitions*

100.    Article I of the Plan Document defines the following terms as follows:

   a.    **ESOP Committee**: "ESOP Committee" means the KPC Healthcare Holdings, Inc. Employee Stock Ownership Plan Committee, which members are appointed by the Board, as from time to time constituted.

   b.    **Fiduciary**: "Fiduciary" means any person who: (a) exercises any discretionary authority or discretionary control and management of this Plan or exercises any authority or control and management or disposition of Plan assets; (b) renders investment advice for a fee or other compensation,

FIRST AMENDED CLASS ACTION COMPLAINT                                    26

direct or indirect, with respect to any monies or other property of the Trust or has any authority or responsibility to do so; or (c) has any discretionary authority or discretionary responsibility in the management of this Plan and the Trust, including, but not limited to, the Trustee, the ESOP Committee, and any person designated under ERISA Section 405(c)(1)(B).

c. **Plan Administrator**: "Plan Administrator" is the ESOP Committee unless the Company designates another person or persons to hold the position of Plan Administrator. In addition to its other duties, the Plan Administrator has full responsibility for compliance with the reporting and disclosure rules under ERISA.

d. **Trust**: "Trust" means the KPC Healthcare, Inc. Stock Ownership Trust which is and becomes a part of this Plan.

e. **Trustee**: "Trustee" means the trustee or trustees acting at the time in question under the Trust, and its or his or her or their successor(s) as such.

101. Section 11.15 of the Plan Document provides that the "Named Fiduciaries" of this Plan are (1) the Trustee, (2) the ESOP Committee, (3) the Appeal Committee (if appointed), and (4) any Investment Manager appointed hereunder.

*The ESOP Committee*

102. Section 9.1 of the Plan Document provides that "the Company [i.e. KPC] may appoint an ESOP Committee to administer the Plan. In the absence of an ESOP Committee, the Board of Directors assumes the powers, duties and responsibilities of the ESOP Committee."

103. Section 9.3 of the Plan Document provides that "the ESOP Committee is empowered to assist the Trustee to satisfy and operate this Plan in accordance with the terms of this Plan, the Trust, the Code, and ERISA."

FIRST AMENDED CLASS ACTION COMPLAINT                    27

104.    Section 9.4 of the Plan Document provides that the ESOP Committee has full discretion and authority to perform the following powers and duties, among others:

    a.    To engage the service of agents whom it may deem advisable to assist it with the performance of its duties.

    b.    To engage the services of an Investment Manager or Managers (as defined in ERISA Section 3(38) each of whom will have full power and authority to manage, acquire or dispose (or direct the Trustee with respect to acquisition or disposition) of any Plan asset under its control.

    c.    To construe and interpret this Plan and the rules and regulations adopted and to answer all questions arising in the administration interpretation and application of this Plan document and documents related to this Plan's operation.

    d.    To establish procedures, correct any defect, and resolve any inconsistency in such manner and to such extent as shall be necessary or advisable to carry out the purpose of this Plan.

105.    Section 9.6 of the Plan Document provides that "the decision of a majority of the members of the ESOP Committee appointed and qualified controls."

*Trustee*

106.    Section 11.15 of the Plan Document provides that "[t]he ESOP Committee shall have the sole responsibility for the administration of this Plan."

107.    Section 11.15 of the Plan Document provides that the Trustee shall have the sole responsibility to, among other things, "determine that the purchase price paid to purchase Qualifying Employer Securities does not violate the prohibited transaction rules…."

FIRST AMENDED CLASS ACTION COMPLAINT    28

**Relevant Provisions of the Trust Agreement**

108.   Section 2.2 of the Trust Agreement provides that the Trustee "is the sole discretionary fiduciary with respect to borrowing money with respect to the purpose of purchasing Employer Securities and for the purchase or sale of Employer Securities."

109.   Section 2.4(a) of the Trust Agreement provides that the Trustee has "full discretion and authority… to invest the Trust Fund primarily in Employer Securities (provided the Trustee does not pay in excess of 'Adequate consideration' and such purchase of Employer Securities would not otherwise constitute a 'prohibited transaction' as such terms are defined by ERISA and the Code)...."

110.   Section 6.4 of the Trust Agreement provides that the Company shall fill any vacancy in the office of Trustee.

## COUNT I
### Knowing Participation in Breaches of Fiduciary Duty
### Under ERISA §§ 404(a)(1)(A) and (B),
### 29 U.S.C. §§ 1104(a)(1)(A) and (B), and Prohibited Transactions Under
### ERISA § 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b)

111.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

**Underlying Violation of ERISA § 406(a)**

112.   ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

113.   ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include (A) any fiduciary … of such employee benefit plan", and (H) an employee,

FIRST AMENDED CLASS ACTION COMPLAINT                    29

officer or director or a 10 percent or more shareholder of an employer covered by the Plan.

114.   At least as a result of being a fiduciary of the ESOP, and as a result of being an officer of and director of KPC, Dr. Kali Pradip Chaudhuri qualified as a party in interest within the meaning of ERISA § 3(14).

115.   ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

116.   ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary." ERISA § 3(18)(B) requires that the fiduciary or party-in-interest show that the price paid must reflect the fair market value of the asset at the time of the transaction, and the fiduciary conducted a prudent investigation to determine the fair market value of the asset.

117.   As Trustee, Alerus caused the Plan to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by failing to ensure that the ESOP paid no more than fair market value for KPC stock purchased in the 2015 ESOP Transaction. Specifically, the ESOP paid more than fair market value for shares sold by Kali Pradip Chaudhuri.

**Underlying Violation of ERISA § 406(b)**

118.   ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not (1) "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or (2) "deal with the assets of the plan in his own interest or for his own account," or (3) "receive any consideration for his own

FIRST AMENDED CLASS ACTION COMPLAINT                              30

personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

119. As chairman of the Board of Directors of KPC and in turn a member of the ESOP Committee, Kali Pradip Chaudhuri was a fiduciary of the ESOP at the time of the 2015 ESOP Transaction.

120. By selling his shares of KPC stock to the Plan in the 2015 ESOP Transaction, Dr. Chaudhuri acted in a transaction involving a plan where his own interests were adverse to those of the ESOP within the meaning of ERISA § 406(b)(1), he dealt with the assets of the Plan, which purchased his KPC stock, in his own interest within the meaning of ERISA § 406(b)(2), and as a result of the receipt of the proceeds from the sale of his KPC stock received consideration for his own personal account in connection with a transaction involving assets of a plan within the meaning of ERISA § 406(b)(3).

**Underlying Breaches of Fiduciary Duties**

121. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

122. In the context of a transaction involving the assets of the Plan, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the plan and its participants receive adequate consideration for the plan's assets and the participants' account in the plan.

123. Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the

FIRST AMENDED CLASS ACTION COMPLAINT                                    31

asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

124.   To fulfill its fiduciary duties, Alerus was required to undertake an appropriate and independent investigation of the fair market value of KPC stock in the 2015 ESOP Transaction in order to fulfill its fiduciary duties.  Among other things, Alerus was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the 2015 ESOP Transaction; to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense.

125.   An appropriate investigation would have revealed that the valuations used for and the price paid by the ESOP in the 2015 ESOP Transaction did not reflect the fair market value of the KPC stock purchased by the Plan, the 2015 ESOP Transaction was not in the best interests of the Plan participants and the 2015 ESOP Transaction would cause the ESOP to take on excessive debt. Additionally, Alerus was required to remedy the ESOP's overpayment for KPC stock after the date of the 2015 ESOP Transaction, including as necessary correcting the prohibited transaction by seeking the overpayment from Kali Pradip Chaudhuri and/or the breaching Trustee.

**Knowing Participation by Defendant SPCP Group in Prohibited Transactions and Fiduciary Breaches**

126.   According to Defendant SPCP Group's Amended Schedule 13-D filed on September 12, 2013 with the Securities and Exchange Commission, Defendant SPCP Group was aware of the details of the 2014 transaction by which Dr. Chaudhuri took Integrated Healthcare private. The Amended Schedule 13-D stated that Defendant SPCP Group agreed to provide Kali Pradip Chaudhuri a term loan for the purpose of acquiring 100,110,430 shares of common stock of Integrated

FIRST AMENDED CLASS ACTION COMPLAINT                                    32

Health. According to the same filing, Dr. Chaudhuri planned a second step, "short-form" merger through which he would acquire 100% of the outstanding shares of Integrated Health at $0.203 per share. The Amended Schedule 13-D also stated that, in connection with the 2014 transaction in which Dr. Chaudhuri took Integrated Healthcare private, Defendant SPCP Group and its members, Edward A. Mulé, and Robert J. O'Shea, would enter into an agreement with the "Chaudhuri Shareholders" (including Dr. Chaudhuri) concerning their rights and obligations as to the governance of Integrated Health and limitations and other provisions governing the disposition of shares of Integrated Health owned by SPCP Group.

127.   According to the Amended Schedule 13-D, SPCP Group held sole voting power, and Edward A. Mulé and Robert J. O'Shea held shared voting power, over the warrants to 96,000,000 shares of common stock of Integrated Health. According to the Amended Schedule 13-D, SPCP Group, Mulé, and O'Shea, together with "the Chaudhuri shareholders" (including Dr. Chaudhuri), "would exercise their existing warrants to acquire, in cashless exercises, additional shares of Common Stock" so that SPCP Group, Mulé, and O'Shea and their undisclosed "affiliates . . . would collectively own 25% of the issued and outstanding capital stock of [Integrated Healthcare] and the Chaudhuri Shareholders would beneficially own the remainder of the capital stock of [Integrated Healthcare]."

128.   Based on their involvement in planning the 2014 transaction with Dr. Chaudhuri as described in their 2013 disclosures to the SEC, SPCP Group, Mulé, and O'Shea knew that Dr. Chaudhuri planned and organized the 2014 transaction to result in his acquisition of all of the outstanding shares of Integrated Health. On information and belief, as investors in KPC, SPCP Group, Mulé, and O'Shea were aware of publicly available information that remaining shareholders of Integrated Health were paid $0.203 per share for their shares in the 2014 transaction—the price SPCP Group, Mulé, and O'Shea had agreed upon with Dr. Chaudhuri, as

FIRST AMENDED CLASS ACTION COMPLAINT                                    33

recited in their 2013 disclosures to the SEC. According to SPCP Group's Amended Schedule 13-D filed in 2014, SPCP Group, Mulé, and O'Shea did not end their involvement in planning and arranging for the 2014 transaction until February 2014 – one month after Integrated Health terminated the registration of its securities with the SEC.

129.   KPC purchased 100% of the common stock warrants owned by SPCP Group, Mulé, and O'Shea as part of the 2015 Transaction at the purchase price of KPC common stock. Based on their involvement in planning for and arranging the 2014 transaction as recited in their disclosures to the SEC, and as investors in KPC, SPCP Group, Mulé, and O'Shea knew that Dr. Chaudhuri was the chairman and CEO of KPC and that Dr. Chaudhuri would receive payment for his shares of common stock from KPC at the purchase price of the KPC stock component of the 2015 Transaction.

130.   Based on their involvement in planning for and arranging the 2014 transaction, SPCP, Mulé, and O'Shea knew that the purchase price for the KPC stock component of the 2015 ESOP Transaction represented a more than 419% increase over the equity value implied by the price that Dr. Chaudhuri paid to acquire shares of KPC stock in the 2014 transaction. Based on their involvement in planning for and arranging the 2014 transaction, and as investors in KPC, SPCP, Mulé, and O'Shea knew that the purchase price for the KPC stock component of the 2015 ESOP Transaction represented an increase of between 774% and 2,133% from the equity value implied by the prices at which Integrated Health traded on the public market between April 2012 and March 2013. As investors in KPC, SPCP, Mulé, and O'Shea were also aware of KPC's performance as of 2015, as described in publicly reported comments by its CEO of Health Operations.

131.   Based on the Analysis of Transaction Fairness filed by the KPC Defendants at docket entry no. 206-2 in *Gamino v. KPC Healthcare Holdings, Inc.*, Defendant SPCP Group participated in the 2015 ESOP Transaction, including by

FIRST AMENDED CLASS ACTION COMPLAINT                                    34

entering into a Warrant Purchase Agreement between the Company and SPCP Group, LLC, dated August 28, 2015 and an Investor Rights Agreement between the Trust, the Seller, the Redeemed Warrantholders, and KPC Healthcare, Inc., dated August 28, 2015.

132.   Based on the foregoing, Defendant SPCP Group was aware of facts sufficient to establish and either knew or should have known that the 2015 ESOP Transaction constituted a prohibited transaction with Dr. Chaudhuri, a Plan fiduciary and party-in-interest. As a knowing participant in the 2015 ESOP Transaction, Defendant SPCP Group is subject to appropriate equitable relief for its knowing participation in the violations of ERISA § 406(a) & (b), 29 U.S.C. § 1106(a) & (b),

133.   Based on the foregoing, Defendant SPCP Group was aware of facts sufficient to establish and either knew or should have known that Alerus causing the ESOP to engage in the 2015 ESOP Transaction constituted a breach of fiduciary duty. As a knowing participant in the 2015 ESOP Transaction, Defendant SPCP Group is subject to appropriate equitable relief for the violations of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

## ENTITLEMENT TO RELIEF

134.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue Defendant SPCP Group for any appropriate equitable relief to redress the wrongs described above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff on behalf of herself and the Class, pray that judgment be entered against Defendant on each claim and be awarded the following relief:

A.     Declare that Defendant has knowingly participated in breaches of fiduciary duties under ERISA;

FIRST AMENDED CLASS ACTION COMPLAINT                                    35

B.     Declare that Defendant has knowingly participated in prohibited transactions by Alerus and Kali Pradip Chaudhuri in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), with respect to the 2015 ESOP Transaction;

C.     Order that Defendant provide other appropriate equitable relief to the ESOP, including but not limited to, by providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

D.     Require Defendant to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or order payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

E.     Award pre-judgment interest and post-judgment interest; and

F.     Award such other and further relief that the Court determines that Plaintiff and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

FIRST AMENDED CLASS ACTION COMPLAINT                                    36

Dated: November 22, 2021

Respectfully submitted,

_____

R. Joseph Barton (SBN 212340)
BLOCK & LEVITON LLP
1735 20th Street, N.W.
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email: jbarton@blockleviton.com

Daniel M Feinberg (SBN 135983)
Nina Wasow (SBN 242047)
Feinberg Jackson Worthman & Wasow LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
510-269-7998
Fax: 510-269-7994
Email: dan@feinbergjackson.com
Email: nina@feinbergjackson.com

Richard E Donahoo
Donahoo and Associates PC
440 West First Street Suite 101
Tustin, CA 92780
714-953-1010
Fax: 714-953-1777
Email: rdonahoo@donahoo.com

*Attorneys for Plaintiff*

FIRST AMENDED CLASS ACTION COMPLAINT                    37

**Certificate of Service**

I certify that on November 22, 2021, I served the foregoing Amended Class Action Complaint by first class mail on Theodore M. Becker, 444 West Law St., Ste. 400, Chicago, IL 60606, counsel for Defendant SPCP Group, LLC.

Ming Siegel

FIRST AMENDED CLASS ACTION COMPLAINT                                    38